**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**COLUMBIA DIVISION**

| | | |
|---|---|---|
| **DAVID S. PRICE, JR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 1:11-00077** |
| **v.** | ) | **Judge Knowles** |
| | ) | **Jury Demand** |
| **COUNTY OF MAURY, TENNESSEE,** | ) | |
| **ENOCH GEORGE, and PAUL YOUNG,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION**

**I. Introduction and Background**

Pending before the Court is a Motion to Dismiss filed by Defendants Maury County, Tennessee, Sheriff Enoch George, and Reserve Officer Paul Young. Docket No. 6. Along with their Motion, Defendants have filed a supporting Memorandum of Law. Docket No. 7.

Plaintiff has filed a Response and supporting Memorandum with Exhibits (Docket Nos. 15, 15-1, 16-1), and Defendants have filed a Reply (Docket No. 17).

Plaintiff, who is represented by counsel, filed this action pursuant to 42 U.S.C. §1983, alleging violations of his Fourth Amendment rights, and generally alleging that one or more Defendants were deliberately indifferent to his constitutional rights. Docket No. 1. He also raises several pendent state law claims. *Id.* Plaintiff's claims derive from his transport from Nashville to the Maury County Jail on September 15, 2011. *Id.* At the heart of this case, Plaintiff avers that Defendant Young left him in a locked, parked car in the heat with the windows only cracked, resulting in his sweating profusely, needing hospital treatment, and

1

suffering lingering headaches. *Id.* Plaintiff sues Defendant Maury County because this action involves the "acts, inactions and omissions of the Maury County Sheriff's Department ("MCSD") and it's agents, servants, and employees." *Id.* Plaintiff sues Defendant Sheriff George in his individual and official capacities, because he was, at all times relevant to the case at bar, the Sheriff of Maury County, "and in such capacity was responsible for the hiring, training, and supervision of Deputy Sheriffs, Reserve Officers, jailers, and other personnel of the MCSD." *Id.* Plaintiff sues Defendant Young in his individual and official capacities, as Defendant Young was, at all times relevant to the case at bar, a Reserve Officer of the MCSD and was utilized by the MCSD in a variety of duties, including patrol and the transportation of prisoners.[1] *Id.* Plaintiff seeks compensatory and punitive damages, as well as pre and post judgment interest, attorneys fees, all recoverable costs and expenses, and any other relief to which he may be entitled. *Id.*

Defendants argue that Plaintiff's Complaint should be dismissed because: (1) Defendant Young is entitled to qualified immunity in his individual capacity; (2) Plaintiff's Complaint fails to state a Fourth Amendment claim against Defendant Young; (3) Plaintiff's Complaint fails to state any kind of Eighth Amendment deliberate indifference claim against Defendant Young; (4) Maury County cannot be liable to Plaintiff because Plaintiff has failed to allege facts demonstrating that Deputy Young violated his constitutional rights; and (5) if the Court dismisses Plaintiff's federal claims, the Court should decline to exercise supplemental

---

[1] In paragraph 4 of Plaintiff's Complaint, Plaintiff specifically states that Defendant Young is "sued individually." Docket No. 1. In paragraph 8 of Plaintiff's Complaint, however, Plaintiff states that "Defendants George and Young took their actions or inactions in both an official and unofficial capacity." *Id.* For the purposes of the instant Motion, the undersigned will assume that Plaintiff sues Defendant Young in both his individual and official capacities.

2

jurisdiction over Plaintiff's state law claims. Docket Nos. 6, 7.

Plaintiff responds that Defendant Young is not entitled to qualified immunity because "an officer may not detain an unarmed, non-dangerous suspect by locking him in a car in the middle of mid-day heat, which is commonly known to lay persons to cause serious injury and death." Docket No. 15, p. 5. Plaintiff argues:

> Popular culture, electronic media announcements, and public outcry have all created a society wherein leaving a pet or a child in a hot car, even with the windows cracked, is an offense capable of turning an individual into a social pariah due to the common and widespread knowledge that such a thing can cause serious and substantial bodily injury or even death.

*Id.*

Plaintiff contends that Defendant Young is not entitled to qualified immunity because he: (1) "us[ed] a sweltering car as a holding cell," and (2) "indifferently and recklessly ignor[ed] the subsequent discharge orders of the physician [who] treated [Plaintiff]." *Id.*, p. 6.

Plaintiff further argues that Defendant Young exerted unreasonable force in the seizure of Plaintiff when Defendant Young told Plaintiff that he was not allowed to leave the car and its air conditioner running while he was not in the vehicle, and when Defendant Young left Plaintiff in the hot vehicle, rather than moving him into a holding cell at a facility while they waited for another prisoner. *Id.*, p. 7.

Plaintiff also complains that Defendant Young "ignor[ed] the discharge instructions given by the physician which led to a worsening of Plaintiff's injuries." *Id.* Specifically, Plaintiff contends that the hospital discharge instructions stated that Plaintiff was to "lie flat with his head at body level for six hours following the spinal tap," but that Defendant Young "ignored this and forced Plaintiff to walk and ride, upright, in a vehicle," resulting in the worsening of his

Case 1:11-cv-00077   Document 18   Filed 05/08/12   Page 3 of 22 PageID #: 87

headaches. *Id.*

Plaintiff states that the Maury County Sheriff's Department also "displayed deliberate indifference by failing and refusing to provide Plaintiff the physician-ordered follow-up care." *Id.*, p. 8. Plaintiff additionally argues that Maury County is liable because he has demonstrated that Defendant Young, "its agent," violated his constitutional rights. *Id.* Finally, Plaintiff argues that the Court should exercise supplemental jurisdiction over his state law claims because he has established his federal claims. *Id.*, p. 9.

Defendants reply that the allegations of Plaintiff's Complaint "fall woefully short of establishing a constitutional violation based on excessive force." Docket No. 17, p. 1. Defendants argue that Plaintiff's own allegations demonstrate that Defendant Young was attentive to Plaintiff's needs: he stopped at a McDonald's and bought Plaintiff a bottle of water and got some ice, gave the ice water to Plaintiff to drink, and drove Plaintiff to the hospital. *Id.*, p. 3-4. Defendants also argue that Plaintiff's hospital records, attached to Plaintiff's response, are inadmissable hearsay, but they contend that those records actually undermine Plaintiff's claim because they demonstrate that Plaintiff was not suffering from any serious medical condition or any sufficiently serious medical need.[2] *Id.*, p. 4. Defendants further argue that, "Plaintiff's claim that he had to sit upright in the patrol car on his way to the jail and that he had to wait nine days before going back to the doctor essentially amounts to displeasure with the adequacy of the treatment he received once he was discharged from the hospital." *Id.*, p. 5. Defendants contend that Plaintiff's dispute is a dispute over the adequacy of care, and that

_____

[2]As will be discussed in greater detail below, the Court will decline to consider these records.

4

neither negligence nor medical malpractice will support a constitutional claim.  *Id.*  Accordingly, Defendants reiterate that Defendant Young is entitled to qualified immunity in his individual capacity, that Defendant Maury County should be dismissed, and that the Court should decline to exercise supplemental jurisdiction over Plaintiff's pendent state law claims.

For the reasons discussed below, the undersigned recommends that Defendants' Motion to Dismiss be GRANTED.

## II. Facts

The facts set forth in Plaintiff's Complaint, which the Court accepts as true for purposes of the instant Motion, are as follows:

> 12. On September 15, 2010, the Plaintiff was taken into custody in Nashville, Tennessee by U.S. Marshals on a warrant for a probation violation out of Maury County for failing to report to his probation officer.
>
> 13.  The U.S. Marshals placed the Plaintiff in their undercover SUV, while they awaited instructions about where they should transport the Plaintiff.
>
> 14.  Eventually the U.S. Marshals were instructed by Maury County Sheriff Deputy David Wray, who is a member of the MCSD assigned to the U.S. Marshals that the Plaintiff was to be transferred to the custody of the MCSD.
>
> 15.  While the Plaintiff was in the SUV of the U.S. Marshals, the SUV began to heat up and at the Plaintiff's request the U.S. Marshals initially rolled down the windows and then turned the vehicle's air conditioning on high.
>
> 16.  The U.S. Marshals then transported the Plaintiff to the Shell gas station in Brentwood, Tennessee, where they met MCSD Deputy Sheriff Reserve Paul Young.
>
> 17.  At that time the U.S. Marshals removed their handcuffs and the Plaintiff was placed in handcuffs by Young and then placed in

5

Young's squad car.

18.  After placing the Plaintiff in his vehicle, Young advised the Plaintiff that he had to pick up another inmate before he went to Maury County.

19.  Young then drove toward a CCA facility off of Harding Place Road.  The Plaintiff had to give Young directions because Young did not know how to get to the facility.

20.  At this facility the Plaintiff was taken out of the car and placed in a holding cell.  After approximately ten (10) minutes, it was determined that Young had gone to the wrong facility and the Plaintiff was taken out of the holding cell and placed back in Young's vehicle.

21.  After leaving this CCA facility, Young again had trouble locating the correct facility he was supposed to go to and, in fact, ended up at the back of that facility. After finally locating the front of the facility, there was a fire truck parked in front of the facility with its lights on and a fire fighter was about to go into the facility.

22.  Young activated his siren to get the attention of a fireman. The fireman came up to the squad car and Young asked the fireman if he was at the right place to pick up a prisoner.  The fireman told Young that he was at the right place, but that he would have to wait, because they were about to bring out a prisoner.

23.  At that time an ambulance pulled up and the EMTs went into the facility with a stretcher.

24.  Young then moved the squad car to in front of the fire truck and waited for a few minutes.  Young then told Plaintiff that he was going to go into the facility to see if he could hurry them up.

25.  Young then rolled the front windows down to about even with the rain guards over the window, turned the squad car off and exited the squad car.

26.  While the Plaintiff was waiting in the squad car, a bus pulled up and began unloading prisoners, but the prisoners could not go into the facility because of the prisoner being brought out on the stretcher.

6

27.  While the Plaintiff was waiting in the squad car, it kept getting hotter and hotter and the Plaintiff began sweating profusely.

28.  The Plaintiff could see guards standing around, but the Plaintiff was unable to get their attention even by yelling as loudly as he could.

29.  The next thing that the Plaintiff remembers is that Young was shaking him violently and asking him what was wrong.

30.  The Plaintiff told Young that he was really hot and that he needed something to drink.  Officer Young told him he had nothing to give him to drink.

31.  The Plaintiff then told Young that he needed water and that he needed to go to the hospital for medical care.

32.  The next thing that the Plaintiff remembers is that Young pulled into a McDonalds and went through the drive-up ordering a bottle of water and a cup of ice.

33.  At that time the Plaintiff asked the other inmate in the car to help him get his shirt off and the other inmate told him that he could not touch him.

34.  After getting the water and ice, Young pulled over to the side of the road, exited the squad car and gave the Plaintiff the water and ice through the rear window.

35.  The Plaintiff drank some of the water and again told Young that he needed to go to the hospital.

36.  The Plaintiff observed Young calling someone on the phone and overheard Young telling someone that there was a problem, because "Price is tripping out" or similar words.

37.  The next thing that the Plaintiff remembers is hearing sirens and then lying in the hospital bed, cuffed to the bed and being attended to by medical staff.

38.  While at the hospital the Plaintiff asked Young why he did not leave the car running and Young said it was because he was not allowed to do so.

7

39.  At the hospital the Plaintiff received treatment for his condition, including but not limited to a spinal tap and CAT scan. After the tests were run on the Plaintiff he was released by the hospital with discharge instructions that included, but were not limited to his being left in a prone position for several hours after the spinal tap.

40.  After his release from the hospital the Plaintiff was not left in a prone position and was made to walk, stand, and sit upright in a squad car.  The MCSD failed to follow the discharge instructions given for the Plaintiff by the hospital.

41.  The Plaintiff began experiencing severe headaches.  The Plaintiff was not allowed to seek additional medical help after he arrived back at the Maury County jail.

42.  The Plaintiff had to write letters to the hospital before he was allowed to receive follow-up care.  The Plaintiff was not taken to his follow-up appointment with a doctor until September 24, 2010.

Docket No. 1, p. 2-5.

## III. Analysis

### A.  Plaintiff's Medical Records

As discussed above, with his Response to the instant Motion, Plaintiff submitted six pages of unverified medical records from Southern Hills Medical Center dated September 15, 2010.  In considering a Motion to Dismiss, however, the Court may consider only facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings, and matters of which the judge may take judicial notice.  *Moore's Fed. Practice* 3rd § 12.34[2], p. 12-87.  Additionally, the Court may not take into account additional facts asserted in the Memorandum opposing the Motion to Dismiss, because the Memorandum is not a "pleading." *Id.*, p. 12-90.  The Court, therefore, will exclude the medical records pursuant to Fed. R. Civ. P. 12(d).

8

**B. Standard of Review: Motion to Dismiss**

Fed. R. Civ. P. 12(b)(6) provides that an action may be dismissed for failure to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory. *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005). Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice. *Id.* A complaint containing a statement of facts that merely creates a suspicion of a legally cognizable right of action is insufficient. *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1965 (2007). The "[f]actual allegations must be enough to raise a right to relief above the speculative level"; they must "state a claim to relief that is plausible on its face." *Id.* At 1965, 1974. *See also, Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007).

Moreover, the United States Supreme Court has recently addressed the appropriate standard that must be applied in considering a Motion to Dismiss for failure to state a claim. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 137 L. Ed. 2d 868 (2009). The *Iqbal* Court stated in part as follows:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice . . . . Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior error, but it does not unlock the doors of discovery for plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss . . . . Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task

9

that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief."

129 S.Ct. at 1949-1950, 173 L. Ed. 2d at 884 (citations omitted).

## C.  42 U.S.C. § 1983

Plaintiff's claims arise under 42 U.S.C. § 1983, which provides, in part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

Thus, in order to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55 (1988)*, citing Parratt v. Taylor,* 451 U.S. 527, 535, 101 S. Ct. 1908, 1913, 68 L. Ed. 2d 420 (1981) (overruled in part on other grounds, *Daniels v. Williams,* 474 U.S. 327, 330-331, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986)); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155, 98 S. Ct. 1729, 1733, 56 L. Ed. 2d 185 (1978).  The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Id.* at 49, 108 S. Ct. 2255*, quoting United States v. Classic,* 313 U.S. 299, 326, 61 S. Ct. 1031, 1043, 85 L. Ed. 1368 (1941).

## D.  Qualified Immunity

Qualified immunity is "an *immunity from suit* rather than a mere defense to liability." *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001). Qualified immunity generally shields government officials performing discretionary functions from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1983). The right at issue "must have been articulated with a significant degree of particularity," (*Eugene D. v. Karman*, 889 F.2d 701, 706 (6th Cir. 1989), so that it is sufficiently clear to a reasonable official that his or her conduct would violate the right at issue. Qualified immunity is available as long as the official's actions "could reasonably have been thought consistent with the rights [he or she is] alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S. Ct. 3034, 3038, 97 L. Ed. 2d 523 (1987).

The initial inquiry and threshold question, according to the Supreme Court, is: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.*, *citing Siegert v. Gilley,* 500 U.S. 226, 232, 111 S. Ct. 1789, 1973, 114 L. Ed. 2d 277 (1991). If no constitutional right was violated, there is no necessity for further inquiry. *Id.*

A critical question is whether "any official in the defendants' position would understand that what he did violated those rights." *O'Brien v. City of Grand Rapids*, 23 F. 3d 990, 999 (6th Cir. 1994). Qualified immunity, therefore, "does not turn on the subjective good faith of the official; rather, it turns on the 'objective legal reasonableness' of his actions, assessed in light of the legal rules that were 'clearly established' at the time the actions were taken." *Id.,* (quoting

11

*Harlow*, 457 U.S. at 818-19). "If officers of reasonable competence could disagree on whether the conduct violated the plaintiff's rights," qualified immunity will apply. *Id.*, (quoting *Grossman v. Allen*, 950 F. 2d 338, 341 (6ᵗʰ Cir. 1991)(citations omitted).

## E. The Case At Bar

### 1. Defendant Young

The only Constitutional provision mentioned by Plaintiff in his Complaint, with regard to Defendant Young's actions, is the Fourth Amendment. Plaintiff states:

> 48. Defendant Young's intentional acts, inactions, or omissions in connection with his transporting of the Plaintiff after the Plaintiff's arrest deprived the Plaintiff of his clearly-established right to be free from unreasonable searches and seizures under the Fourth Amendment.

Docket No. 1, p. 5.

Plaintiff also avers that all "Defendants' intentional acts, inactions or omissions were conducted with deliberate indifference to the Plaintiff's constitutional rights." *Id.*

Plaintiff's Fourth Amendment claim rests upon his "clearly-established right to be free from unreasonable searches and seizures . . . ." Docket No. 1, p. 5.

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

It appears that Plaintiff is alleging that Defendant Young's actions and/or inactions

12

constituted excessive force.[3]  The Sixth Circuit has set forth the following analysis with regard to such claims:

> If the plaintiff was a free person at the time of the incident and the use of force occurred in the course of an arrest or other seizure of the plaintiff, the plaintiff's claim arises under the Fourth Amendment and its reasonableness standard. . . . That standard requires that the officer's use of force be objectively reasonable, balancing the cost to the individual against the Government's interests in effecting the seizure. . . . This standard contains a built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case. . . . The officer's subjective intentions are irrelevant to the Fourth Amendment inquiry.

*Phelps v. Coy,* 285 F.3d 295, 299 (6th Cir. 2002).

The Sixth Circuit has also stated, "[T]he Fourth Amendment protects against only unreasonable seizures, it is not guarantee against unreasonable or outrageous official conduct generally."  *Eewolski v. City of Brunswick*, 287 F.3d 492, 505 (6th Cir. 2002).

Focusing on the factual allegations of the Complaint, the Court cannot conclude that Defendant Young's actions under the circumstances were objectively unreasonable.  The facts show that Defendant Young advised Plaintiff that he needed to pick up "another inmate" before taking him to Maury County.  Defendant Young went to a facility to pick up the other person, but there was a fire truck parked in front of that facility.[4]  Defendant Young was told by a firefighter that he would have to wait because they were about to bring out a prisoner.  An

---

[3]  Plaintiff makes no claim that his arrest, which was effectuated pursuant to a warrant, violated the Fourth Amendment.

[4]  Plaintiff refers to the fact that Defendant Young had trouble locating the correct facility where the other inmate was housed.  These allegations, however, fail to state any kind of claim against Defendant Young, much less a Constitutional violation.

13

ambulance pulled up, and the EMT's went into the facility with a stretcher. Defendant Young

moved his car to the front of the fire truck, waited for a few minutes, and then told Plaintiff that

he was going to go into the facility to see if he could "hurry them up." Plaintiff avers, "Young

then rolled the front windows down to about even with the rain guards over the window, turned

the squad car off and exited the squad car." Docket No. 1, p. 3. Plaintiff states that while he was

waiting in the squad car, he began sweating profusely. He could see "guards" standing around,

but he was unable to get their attention. Then, "[t]he next thing that the Plaintiff remembers is

that Young was shaking him violently and asking him what was wrong." *Id.*, p. 4.

The Sixth Circuit has previously addressed an excessive force case in which an arrestee

was placed in a hot car. *See Burchett v. Kiefer,* 310 F.3d 937 (6th Cir. 2002). The *Burchett* Court

stated in relevant part as follows:

> The Fourth Amendment requires that an officer's use of force be
> objectively reasonable, and courts must balance the consequences
> to the individual against the Government's interests in effecting
> the seizure. . . . This standard contains a built-in measure of
> deference to the officer's on-the-spot judgment about the level of
> force necessary in light of the circumstances of the particular case .
> . .
>
> . . .
>
> [Plaintiff] claims that his detention in the police car with the
> windows rolled up in ninety degree heat for 3 hours constituted
> excessive force. We agree that unnecessary detention in extreme
> temperatures, like those that could be reached in an *unventilated
> car in ninety-degree heat*, violates the Fourth Amendment's
> prohibitions on unreasonable searches and seizures.
>
> . . .
>
> The officers had many equally effective alternative ways of
> detaining [Plaintiff] that would not have subjected him to
> excessive heat, *but their denial of his request that they roll down*

14

> *the windows to allow him air* indicates a wanton indifference to
> this important safety factor.  They could have left the windows
> slightly open, for example, or utilized the car's cooling or
> ventilation devices. . . .  Thus we conclude that those responsible
> for detaining [Plaintiff] *for 3 hours in ninety-degree heat with no
> ventilation* violated his Fourth Amendment right against
> unreasonable seizures.

310 F.3d at 945 (emphasis added).

In the case at bar, Plaintiff makes no allegation as to how long he was in the car or as to

how hot it was.  Moreover, Defendant Young did roll down the front windows.  Plaintiff makes

no allegation that he asked Defendant Young to roll the windows down further, to leave the

squad car running, or to leave the air-conditioner running while he was out of the car.[5]

For the foregoing reasons, Defendant Young did not violate Plaintiff's Fourth

Amendment right to be free from the use of excessive force.

Plaintiff's claim that Defendant Young was "deliberately indifferent to his constitutional

rights" is quite nebulous.  The concept of deliberate indifference is a familiar one in Eighth

Amendment jurisprudence.  To the extent that Plaintiff attempts to raise an Eighth Amendment

claim against Defendant Young, his efforts are misplaced.  The Eighth Amendment itself does

not apply.  The U.S. Supreme Court has stated:

> Eighth Amendment scrutiny is appropriate only after the State has
> complied with the constitutional guarantees traditionally associated
> with criminal prosecutions . . . . [T]he State does not acquire the
> power to punish with which the Eighth Amendment is concerned
> until after it has secured a form of adjudication of guilt in
> accordance with due process of law.

---

[5]  In fact, Plaintiff avers that, while he was at the hospital, he asked Defendant Young
why he did not leave the car running, and Young told him it was because he was not allowed to
do so.

15

*City of Revere v. Massachusetts General Hospital*, 463 U.S. 239, 244 (1983) (internal quotation marks omitted).

The relevant constitutional provision, assuming Plaintiff is making an argument about a denial of medical care, is the due process clause of the Fourteenth Amendment. *Id.* The *Revere* Court, while it did not define the scope of the due process obligation to arrestees who require medical attention, did state, "the due process rights of a person in [the arrestee's] situation are at least as great as the Eighth Amendment protections available to a convicted prisoner." *Id.*, *citing Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979).

The Sixth Circuit has applied the "deliberate indifference" standard in a case involving a pretrial detainee who was allegedly denied medical treatment after his arrest. *Napier v. Madison County, Kentucky,* 238 F.3d 739 (6th Cir. 2001). In *Napier*, the Court noted that "deliberate indifference" has both an objective and a subjective component. *Id.*, p. 742. The *Napier* Court quoted *Brown v. Bargery,* 207 F.3d 863, 867 (6th Cir. 2000) as follows:

> The objective component requires an inmate to show that the alleged deprivation is "sufficiently serious." As the Supreme Court explained in *Farmer* [*v. Brennan*, 511 U.S. 825 1994)], "The inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." To satisfy the subjective component, an inmate must show that prison officials had a "sufficiently culpable state of mind."

238 F.3d at 742.

The *Napier* Court then adopted an approach taken by three other Circuits, stating that "[a]n inmate who complains that delay in medical treatment rose to a constitution violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." 238 F.3d at 742, *citing Hill v. DeKalb Regional Youth Detention Center,* 40 F.3d 1176, 1188 (11th Cir. 1994).

16

In the case at bar, Plaintiff states that he told Defendant Young that he needed water and that "he needed to go to the hospital for medical care." Docket No. 1, p. 4. Defendant Young stopped at a McDonalds restaurant and gave Plaintiff a bottle of water and a cup of ice. Plaintiff drank some of the water, and "again told Young that he needed to go to the hospital." *Id.* Plaintiff observed Young calling someone on the phone and overheard Young telling someone that there was a problem. The next thing Plaintiff remembers is hearing sirens and then lying in the hospital bed, cuffed to the bed and being attended by medical staff. Nothing in the foregoing facts indicates any deliberate indifference to a serious medical need.

Plaintiff's main medical complaint appears to be that, when he was released by the hospital, he was given discharge instructions which included his remaining in a prone position for several hours. Plaintiff avers that, after his release from the hospital, he was not left in a prone position, as he was "made to walk, stand, and sit upright in a squad car." *Id.*, p. 4. Plaintiff states:

> The Plaintiff began experiencing severe headaches. The Plaintiff was not allowed to seek additional medical help after he arrived back at the Maury County Jail.

*Id.*, p. 5.

Once again, Plaintiff has not shown a serious medical need, and he has not placed into the record verifying medical evidence to establish the detrimental effect of his not being kept in a prone position. Moreover, the allegation that Plaintiff was not allowed to seek additional medical help after he arrived at the Maury County Jail is a general allegation. That allegation does not specify who failed to allow Plaintiff to seek additional help, why Plaintiff would have needed additional medical help since he had just been treated in a hospital, or what the result of

17

his situation was.

For the foregoing reasons, Plaintiff has failed to establish the violation of a Constitutional right with regard to Defendant Young. Defendant Young, therefore, is qualifiedly immune from Plaintiff's claims.[6]

With regard to Plaintiff's official capacity claim against Defendant Young, in complaints alleging federal civil rights violations under § 1983, "[a]n official capacity claim filed against a public employee is equivalent to a lawsuit directed against the public entity which that agent represents." *Claybrook v. Birchwell*, 199 F.3d 350, 355 n.4 (6th Cir. 2000) (*citing Kentucky v. Graham*, 473 U.S. 159, 165, 105 S. Ct. 3099, 3105, 87 L. Ed. 2d 114 (1985)). *See also, Frost v. Hawkins County Bd. of Educ.*, 851 F.2d 822, 827 (6th Cir. 1988). As such, when a public employee is sued in his or her official capacity, the claims are essentially made against the public entity. *Id*.

Inasmuch as Plaintiff brings the instant § 1983 claims against Defendant Young in his official capacity as an employee of the Maury County Sheriff's Department, Defendant stands in the shoes of the entity he represents (*see Claybrook*, 199 F.3d at 355 n.4), which is Maury County. As will be discussed in greater detail below, in order to state a claim against Maury County, Plaintiff must allege facts that show or imply the existence of a constitutionally deficient Maury County official policy, practice, or custom. *City of Canton v. Harris*, 489 U.S. 378, 387-388 (1989). Plaintiff has failed to do so. Accordingly, Plaintiff cannot sustain his official capacity claims against Defendant Young.

---

[6] Because Plaintiff has failed to establish a constitutional violation with regard to Defendant Young, he has also failed to state a claim upon which relief can be granted against Defendant Young.

18

### 2. Defendant George

Plaintiff sues Defendant George because he is the Sheriff, and is therefore in charge of the MCSD. *See* Docket No. 1. In order for Defendant George, as the Sheriff, to be held liable in his individual capacity, Plaintiff must demonstrate that he personally condoned, encouraged, or participated in the conduct that allegedly violated his rights. *Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (citations omitted). *See also, Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984) (*citing Hays v. Jefferson County,* 668 F. 2d 869, 872-874 (6th Cir. 1982) (The supervisor must have "at least implicitly authorized, approved or knowingly acquiesced in" the misconduct.) Conclusory allegations are not enough. *See Street,* 886 F.2d at 1479. *See also, Anderson,* 477 U.S. at 257; *Nix v. O'Malley,* 160 F.3d 343, 347 (6th Cir. 1998); *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 888, 110 S. Ct. 3177, 3188, 111 L. Ed. 2d 695 (1990); *McDonald v. Union Camp Corp.,* 898 F.2d 1155, 1162 (6th Cir. 1990). Plaintiff must establish a "causal connection between the misconduct complained of and the official sued." *Dunn v. State of Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982). Plaintiff fails to do so. In fact, Plaintiff's Complaint is entirely devoid of allegations against Defendant George. Absent the establishment of a "causal connection between the misconduct complained of and the official sued," Plaintiff cannot sustain his individual capacity claim against Defendant George, because § 1983 does not permit the imposition of liability based upon *respondeat superior. Polk County v. Dodson*, 454 U.S. 312, 325 (1981). *See also, Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 694 (1978); *Street v. Corrections Corp. of America*, 102 F.3d 810, 818 (6th Cir. 1996).

As has been discussed above, inasmuch as Plaintiff brings § 1983 claims against Defendant George in his official capacity as the Sheriff and head of the Maury County Sheriff's

Department, Defendant George likewise stands in the shoes of the entity he represents (*see Claybrook*, 199 F.3d at 355 n.4), which is Maury County. As noted, in order to state a claim against Maury County, Plaintiff must allege facts that show or imply the existence of a constitutionally deficient Maury County official policy, practice, or custom (*City of Canton*, 489 U.S. at 387-388), but Plaintiff has failed to do so. Accordingly, Plaintiff cannot sustain his official capacity claims against Defendant George.

### 3.  County Liability

As noted above, Plaintiff sues Maury County because it employs Defendants George and Young and is therefore responsible for their actions or inactions. In order for Maury County to be subject to liability under § 1983, Plaintiff must plead allegations, *inter alia*, that an "official policy or custom was adopted by the official makers of policy with 'deliberate indifference' towards the constitutional rights of persons affected by the policy or custom." *City of Canton* at 387-388; *Monell* at 690-691 (In order to find a governmental entity liable, Plaintiff must establish that, (1) he / she suffered a deprivation of a constitutionally protected interest, and (2) the deprivation was caused by an official policy, custom, or usage of the local governmental entity.).

The allegations against Maury County stated in Plaintiff's Complaint are as follows:

> 54.  Upon information and belief, Maury and/or a county official with final decision-making authority has enacted, operated, maintained, or implemented, or in the alternative, have experienced a sufficient number of constitutional violations to constitute, the following customs, policies, practices or procedures:
>
> a.  Failing to properly train MCSD officers and reserve officers;
> b.  Failing to properly train reserve officer Young in

20

particular;

c. Improperly hiring incompetent and untrained reserve officers, including but not limited to Young;

d. Failing to adopt, establish or implement policies aimed at avoiding endangering citizens in the custody of the MCSD;

e. Failing to properly supervise and discipline MCSD reserve officers;

f. Failing to properly supervise and discipline MCSD reserve officer Young in particular;

g. Mishandling the arrest and transporting of citizens like the Plaintiff.

55. Upon Information and belief, Maury and/or a county official with final decision-making authority knew or should have known about the above customs, policies, practices or procedures.

56. Upon Information and belief, Maury and/or a county official with final decision-making authority remained deliberately indifferent to the unconstitutional characteristics of the above customs, policies, practices or procedures.

Docket No. 1, p. 6.

These allegations are conclusory, and "conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Mezibov*, 411 F.3d at 716. As the *Iqbal* Court also stated: "Threadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." 129 S. Ct. at 1949-50.

Moreover, as discussed above, Plaintiff has failed to establish that either Defendant Young or Defendant George violated his constitutional rights. Because Plaintiff has failed to establish that he suffered a deprivation of a constitutionally protected interest, he cannot establish that a deprivation of a constitutionally protected interest was caused by an official Maury County policy, custom, or usage. Accordingly, Plaintiff cannot sustain his claims against Maury County.

21

**4. Pendent State Law Claims**

Because the Plaintiff has failed to establish his federal claims, the undersigned declines to exercise supplemental jurisdiction over Plaintiff's pendent state law claims, and Plaintiff's state law claims will be DISMISSED WITHOUT PREJUDICE. *See, e.g., United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S. Ct. 1130 (1966).

For the forgoing reasons, Defendants' Motion to Dismiss will be GRANTED. An appropriate Order will be entered.


E. CLIFTON KNOWLES
United States Magistrate Judge

22